Good morning everybody and welcome to Seattle. I am Judge Desai, this is Judge D'Alba to my right, and the two of us are very happy to have Judge Chen sitting with us by designation from the Northern District of California this morning. We have one case that is scheduled for oral argument, that is Sabrina Beram v. City of Sedona. There are 15 minutes set aside for each side, you will keep your own time, and we're ready to begin. Good morning. May it please the court, I'm Pamela Bridge and I am representing appellant Sabrina Beram. I would like to request three minutes for rebuttal. Okay, you'll just keep track of your own time. Thank you. Ms. Beram lives with severe chronic obsessive compulsive anxiety disorder, and her disorder is profoundly difficult. One of the manifestations of her disability is that up to three times a week she is forced to sleep in her car because of her disability. And her disability is not really in dispute as I understand the record. That is correct, that is correct. After the Supreme Court made the grants pass ruling, Ms. Beram has conceded that her Eighth Amendment claim is no longer viable, so we are just here today to ask that you find that she has ADA standing and remand to the District Court. The District Court used the wrong framework for ADA standing when in its footnote it said it was using, that it was dismissing her ADA claim for the same reason it was dismissing her Eighth Amendment claim, in that she did not prove a genuine threat of imminent prosecution. However, a genuine threat of imminent prosecution is not required for establishing ADA standing. Ms. Beram has established and alleged injuries that establish her ADA standing. But anytime, whether it's an ADA case or a constitutional case and you're seeking injunctive relief to stop enforcement of some law, you still have to show a credible threat of prosecution, don't you, whether it's an ADA or any other statute? Ms. Beram is requesting injunctive relief so that she is no longer harmed by the enforcements and the denials of a request of her reasonable accommodation. This court has said that the standard for ADA standing is that, is the harm traceable to a written policy. Here, the written policy is the code, which makes it illegal to sleep in her car, any, on public and private property, something that Ms. Beram must do up to three times a week, and it authorizes enforcement of that. Let me ask you about that, because the city argues that subsection one of the code exempts Ms. Beram from its enforcement. Do you agree with that? No, Your Honor. On the plain language of the code, it's that it is illegal to sleep on private property, even with the property owner's permission. If you look at B, it says that you cannot sleep, camp, or lodge in a vehicle on private property. And then D says that a property owner may not allow anyone to violate this code on their property, on their property. So that is why when we get to I, the exception that you're looking at, that is merely about parking. If that otherwise D would not make sense. Would this make any difference if the city were to say that they are not going to, they're going to honor the landlord's agreement with Ms. Beram to allow her to sleep in the parking lot of her apartment? Would that make any difference if they actually were to expressly state that they don't intend to enforce section B or section D? The original request from Ms. Beram was to ask for a letter from the city to do that, to agree to not enforce it against her so that when she gets police officers in the middle of the night knock on the door that she could hand it to them. And they said no. But they haven't, in fact, taken any steps to enforce or under those provisions or to challenge the agreement that the landlord entered into with her, right? Because they said no. The landlord has, the landlord is also at risk of enforcement on the code against her and has told her that if they or her are cited for it, that she will be evicted. And so actually, currently the landlord, again, is once again afraid of enforcement as not allowing her to sleep in her own apartment complex parking lot. So we're once again back to 2071. Wait, is that in the record that the landlord currently is now preventing her? No, Your Honor, it is not. This is the current status since April of 2025. But can we consider that if it's not in the record? In fact, the contrary factual sort of circumstances are before us in the record. Correct. And I think we should look at it when we're looking at the need for the injunctive relief. But even in the record, it says that if she or the landlord are cited under the code, that she can be evicted. And the code authorizes Sedona to do this any single night, just like in 14, there was a harm. There's a written policy. It happened to them once. And no matter how many times it happened again, this code set, this court has said that if there's a written policy that says it is authorized to occur, she has injunctive relief. So the record currently shows no enforcement by the landlord since the stipulation and even the expiration of the stipulation. You say now that there's been, but we don't see anything. Is that correct that there's nothing? The agreement again with the landlord is that if she or he is cited for it, then she will be evicted. Right. But there's no record of the landlord being cited or threatened with citation. There is none. Counsel, I have a question for you. Walk me through the emotional and psychological harm that your client experiences. She alleges this in her second amended complaint, which did establish her ADA standing and the district court rule erred as a matter of law and not granting that. But she states that she has overwhelming psychological and depression and emotional distress because Sedona refused to to her reasonable accommodation. Because they refused, she talks about losing income and other career opportunities. She alleges there that this emotional distress is up and beyond and different than the normal distress that she has to deal with on an ongoing basis because of her disability. Now, is that distress triggered by just the knowledge that she may have a knock on her car window or is it by the actual knocking on the car window? It is because it's been enforced against her twice now where she's been woken up in the middle of the night, told that she has to move her car or face enforcement. And the fact that Sedona wouldn't agree to it means that every night she has to sleep in her car. She is at risk of this. And so if the city were to agree and say, we're going to give you an exemption, you and the property owner, you're not going to get in trouble. But, you know, they still wake her up because maybe not every single officer understands this is the car with the person who has the exemption. Is there damage is there for her? If she had a letter that she could show to them that she, that's what she originally requests, having a letter to show them. It's not just that she's being woken up. It's just that she's also being told you're going to face arrest or you have to move your car. Also, the Sedona could have decided to make designated places for her to sleep in violation of Vincent v. Thomas. They refuse to engage in any type of interactive process, which is required even under Title II. So we could have found a compromise of what this would look like for her to minimize the damages. But because they've said no, she's had four years of monetary now and psychological injuries. She does allege in that Second Amendment complaint, too, that she's had loss of income because they denied her reasonable accommodation. And that fact alone gives her ADA standing. Well, standing for retrospective relief like damages is different from standing to seek injunctive relief. Well, when we're looking under the ADA, we have to make sure that she's had injury. And that is one of the injuries that she has established. That gets her through the first door. But the second door of she's just seeking damages, yes. But injunctive relief, you still have to look at the threat. And you've argued that the fact that it's in writing, but that's not a per se test. That doesn't necessarily prove there's a credible threat because you can always have a statute that's not enforced. But we know that this has been enforced twice against her now. And the fact that they refuse to grant her reasonable accommodation means that this still can happen to her every single night up to three times a week. So it's if they had agreed to it, she wouldn't be having this threat. But the action of the denial of the reasonable accommodation also adds to the threat that this can happen to her any time during the week. Is there a definition of what credible threat? I mean, what's the quantum? Does it have to be some likelihood? Does it have to be a certainty? Does it have to be more likely than not? What In 14, it says that there needs to be a sufficient likelihood that the harm would occur again. Again, in that case, it just happened to them once. And because there was a written policy that said it could happen, they went back to the movie theater several times. It never happened again. But the court said the fact there is a written policy that says this could happen gives them sufficient likelihood of repeat harm. And is the injunction you're seeking cover both public space as well as the private space? What is the scope of the injunction you're seeking at this? The last request that she asked was to be on just at her after they said no. The first time she asked that it just be at her own apartment complex parking lot. And they said no. We they we explained to Sedona that the landlord needs this accommodation so that they feel that they won't be cited also. And Sedona completely refused. So is that this to answer Judge Chen's question? Yes. Is that the scope of the injunction that you're seeking is to just allow the accommodation for the private parking lot of the apartment complex in which she lives? That is correct, Your Honor. Okay, because I think the complaint may have been more broadly sculpted, but I just want to make That is correct. It is the last request that she has made from Sedona that they denied. But it is just to be able to, they agreed not to enforce at her own apartment complex. Well, Sedona suggests there's a traceability causation issue here that it's really the landlord's decision to enforce or not enforce. In other words, if the city said we don't care, but the landlord said I don't want you in the apartment, you can't blame the city for that. It's not traceable to the city. The landlord can always have trespass or their own landlord-tenant rules against her. I mean, that she must agree to. However, only Sedona can agree to enforce or not enforce their own code. They don't need to get the landlord's permission to agree to do that. The reason that she wanted the accommodation in the first place was to assure the landlord that she nor he were going to be cited for this because under D, the landlord can be cited for this also. Did you say earlier that even though it's not in the record, there is currently no agreement in place between Ms. Barham and the landlord? That is correct. So even if you were to get assurances from the city or obtain an injunction that wouldn't allow the city to enforce or allow the reasonable accommodation in the private parking lot, why wouldn't that still create some level of uncertainty for your client based on your remarks just now that there are other reasons why? Because the landlord, the reason that they are not allowing her to sleep there now is their own fear of being cited under D. So that if she has a reasonable accommodation and says that it's not going to be enforced while I sleep here, that means that the landlord too knows that they're violating the code by allowing her to sleep on the property. The only concern for the landlord that we understand is the code. How do we know that? What's in the record that shows that that's a driving force for the landlord? I see that my time is over. May I just respond? The landlord in the second amendment complaint says that we've alleged that it's our understanding that that is the landlord's fear that, and in the third amending complaint, that the landlord worries about D, the enforcement against the code against them. Do you have any other questions? Okay. You have a little over two minutes left on the clock, which we'll give you two and a half minutes when you come back up for rebuttal. Thank you. Good morning, Your Honors, and may it please the court. I'm impressed with that. I've never seen it rising. That's really cool. We've got to get one of those. If you know how to do that, you'll be more impressed. My name is Kirk Christensen, and I represent the city of Sedona. This case remains a failed attempt to create a case of controversy where none exists. The district court correctly dismissed this case for lack of standing, and that dismissal should be upheld if it is correct for any reason. Why isn't the denial of a reasonable accommodation, in and of itself, injury in fact? The denial alone is not because in order to establish Article 3 standing, there has to be a whole range of injury in fact, which is concrete, particularized, and imminent or actual injury. And in this case, Ms. Barham fails to establish any of those elements of injury in fact. But it's pretty concrete. I mean, the law specifically says if one has a disability and they seek a reasonable accommodation, they may or may not get it, may or may not fundamentally alter the program, et cetera, et cetera. But why isn't that a very concrete injury? You don't dispute her disability and her OCD and those issues, right? Correct. For the purposes of the motion to dismiss, the city does not dispute that she has a disability. So why, to follow up on Judge Desai's question, why isn't that a per se injury given that the ADA applies given her disability and there is at least an alleged violation of the law? If there is a violation of the law, which we have to presume for purposes of standing, why isn't that an injury? For two reasons, Your Honor. First, because there still has to be, just the denial alone does not establish Article 3. There has to be something more, something that's actual, something that's particular to her, some individualized injury, not a generalized grievance. If all it was was a denial, anytime someone violated the law, then every criminal... Well, but it is specific. She's asking for a specific accommodation given her specific disability. She's presenting a concrete case about her. She's not talking about everybody in the world or she's talking about her case and she's been denied that request for reasonable accommodation. If it happens to be wrong, I mean, that may not be determined later on, why is that an injury for standing purposes? I don't believe it's a personalized injury. In this case, she can... Hundreds of people come to Sedona and want a car camp and they all suffer the same type of injury. Simply being told by a police officer that you cannot do what everyone else cannot do and then have to move your car. Let me come at this a different way. The scenario, the hypothetical that you're articulating right now is just not the facts of this case. So here we have a person who has come to the city and said, I'm not asking to be exempt from this ordinance all the time in every place, but I'm asking for the reasonable accommodation of being permitted to sleep in my car. Specifically, I think I heard your friend on the other side just say, for the specific location of her apartment complex, where in fact, the landlord had agreed at least at some point to enter into an agreement to allow her to sleep in her car periodically when necessary. And she comes to the city and she says, this is the reasonable accommodation that I'm requesting to be exempt from this ordinance for this very limited purpose. So first, the premise of that is incorrect. Ms. Barron, a request was to be exempted from a reasonably applied ordinance universally across the city, anytime, anywhere. Her briefing and her complaints still allege that. This is the first time we've heard that she would be fine only sleeping at her apartment complex. Certainly at one point, she said she reduced back to, okay, well, how about just at the apartment complex? Well, the city reached out to the apartment complex and the landlord was unable, which is why both the city and the landlord was, the landlord was unable or unwilling. So is the city's position that it would entertain a reasonable accommodation to allow Ms. Barron to sleep in the parking lot of her apartment complex? The city's position is that it's not required to, that's not a reasonable accommodation under the ADA, but that the facts of this case show that accommodation has been made by the landlord. The landlord, Ms. Barron's been living in the city for over five years, sleeping in her car at least, the council is now saying up to, but the pleadings say at least three times a week, which is 800 times. And her preferred place to sleep is at her apartment complex and the landlord allows that. And the city has never contacted her. If she were to now allege in a Sixth Amendment complaint or whatever, whatever number we're at, that the landlord is not willing to accommodate her now post stipulation because of its fear, his or her fear of subsection D or whatever it is, that the city is going to enforce under D that says, you know, landlords, you can't do this. You can't permit even on private property. If that were in the record, if that were in the allegations, would you concede then that there would be standing? Yes, likely, Your Honor. So, but in this case, the landlord, the city, the records show in the excerpts of records, page 122, 123, that the city reached out to the landlord and the landlord refused to make that accommodation, which is then when both parties end up being sued. The landlord then quickly settled with the defendant. There were additional conversations had between the plaintiff and the, and the city that's shown in the, in the pleadings as well, because they had to take out the part where it said there had been no further conversations. There were, but no, no reasonable accommodation or settlement was able to have, be able to have between the plaintiff and the city in that matter. But the fact that the landlord in his, in his settlement agreement, and I keep saying his, I don't know if it's his or it, in the settlement agreement, the stipulation settling that lawsuit had a condition that is if the city comes after me, this deal is off. So it shows that the landlord was concerned about what the city might do. So there's two, two parts to that. Subsection E of the camping ordinance requires a warning from the property owner. And the city has to be aware of that and know of that. The city has not been made aware of a warning from the landlord about her, not about, not allowing the sparrows sleep at the property. And then subsection I allows for camping. These are both exceptions to the A and B and C, the beginning parts of ordinance allows for a person to camp for up to 24 hours with permission of the property owner. Are those as park? That's one of the differences between says park, not camp. Yeah. So the whole ordinance is about, about camping. There are other sections of the code that deal with vehicular parking and the zoning ordinance. This isn't what's used to enforce parking. This is what's used. This ordinance is used to enforce camping. But it seems to me that much of what we're talking about here could easily be resolved if the city would just agree to not enforce. And, and frankly, I think that that might go a long way also towards your argument on this sort of standing front. If the, if the city were to say, we are actually not going to enforce this ordinance with respect to this individual in this location, which she's been granted an accommodation by us and her landlord to sleep in her car, it would, it would resolve the claims that, that Ms. Brown is bringing. So I don't understand why the city will not agree to a reasonable accommodation or even entertain a discussion with the plaintiff on this. So, yes, your honor, that would resolve the issue and likely make this move. But the city's position is that it's not required to grant a reasonable accommodation to a universally applicable general law like the camping ordinance. This is not any, no one wants to be part of a criminal law because there's no benefit to the criminal law. And Ms. Behram has failed to allege or show what benefit she's missing out in by having the criminal law enforced against her. So your argument really is that the, that our holding in McGarry shouldn't extend to a criminal ordinance. So your, your argument is that the ADA does not apply in this context because this ordinance is a criminal ordinance as opposed to the holdings. Yes, was a civil. Also McGarry was just asking for a reasonable accommodation, meaning just a little bit more time to comply while he was in the hospital. Whereas here Ms. Behram in her pleading and her briefs has continued to request a complete exemption from the city anywhere because sometimes she can't find suitable parking at her apartment. So let's take these two issues one at a time. So the civil versus criminal, I'd like you to walk us through how we can draw the distinction or draw a line between sort of what we said in McGarry, the ADA did apply in this context, civil versus criminal. And then to talk about the second issue that you raise, which is the difference between requesting some extension of time in McGarry and here a complete exemption from why there should be a line drawn with respect to the applicability of that case in this context. So I think the best answer to that, Your Honor, would be that the United States. Which answer to which, which are you take, take, take each issue one at a time and maybe start with the first one between the civil and the criminal. Certainly. So between the civil and criminal, a civil infraction is, it's up to the legislature. And in this case, city council determined what should and shouldn't be a crime. And in this case, the, they decided that it's the best interest of the public to, to regulate a car camping as a criminal offense. It had an interest in McGarry as well. It, you know, make sure yards are cleaned up and that sort of thing. You have an interest. Why couldn't the city decide for itself? You got to do in a certain amount of time. It's important. You can't let it linger. So in that case, the court found that McGarry was establishing or the, the, the city was had a, a yard maintenance program, but in a criminal law, there is no program policy. There is no activity or service that's being prohibited. A criminal law is a non-program, a non-service and non-activity. It's not something anyone's seeking to be a part of. So if this ordinance just issued a fine to individuals who were sleeping in their car, camping in their car versus having the sort of the criminal component to it, if it was similar to McGarry in the sense that it was a civil fine or penalty, would you say that then we would be in a completely different circumstance and? Based on the precedent in McGarry, yes. If it was a civil offense, I think it'd be different. But courts are free as recently stated in the United States Supreme Court. But the interest in the city are exactly the same, whether they are issuing a sort of civil penalty versus. The penalty might be the exact same, but the, the program or activity is different. A criminal law is a universally applicable prohibition. In McGarry, it was a yard maintenance program that they said that he was being in. What if in McGarry, Portland had a criminal sanction attached to it, a criminal fine? Like if you don't clean it up in a certain number of days, it's just a civil thing, but at some point it becomes a misdemeanor or it becomes a criminal infraction. Suddenly the ADA doesn't apply? So yes, at some point the line has to be drawn where the ADA does not apply. And the ADA does not apply in no case cited by Ms. Barham ever stands for the proposition that the ADA protects criminal conduct. So even if the city's interests were the same, the conduct were the same, everything else is the same, the applicable standards, the fact that there's a potential criminal sanction would suddenly make the ADA sort of eviscerate. If everything was the same. But again, in McGarry, there was this yard maintenance program. Here there's a cramping prohibition that is not, has no benefits. There's nothing that anyone wants to be a part of. People seek to avoid it, which is underscored by Ms. Barham, who wants out of this completely from the beginning. She's not asking for a reasonable accommodation here. She wants a complete exemption because at times she can't find suitable parking. Let me go to the reasonableness. Let me go to the reasonableness of the accommodation. I don't know if it goes to whether the ADA even applies. So I don't think it does. The United States Code of Ordinance does not discriminate based on a person's status. And it rather just prohibits conduct regardless of a person's status, including involuntariness. What Ms. Barham is arguing here is, and in fact, the dissents in Powell and Grants Pass, that she's exempt from a criminal law because she has something she's powerless to change. But that idea that involuntariness excludes you from prosecution was rejected both by Powell and Grants Pass. So your argument is that there is an additional reason here that the ADA doesn't extend in this context, and that's because she's seeking this exemption as opposed to an extension of time like we had in McGarry. What if she were not to be seeking an entire exemption from prosecution under this ordinance, but instead a limited accommodation of being able to sleep in her car at her apartment complex? So in that case, the record shows that the city was willing to look into that. It contacted the apartment complex. The landlord said they were unwilling to have her sleep in her car at that time. And so at that point, the city's hands are tied. It can't grant her permission to sleep on private property when the private property owner says they don't want her sleeping there. And so at that point is when Ms. Barham commenced the lawsuit against both parties. What is the record? Maybe help me out, just a threshold question. What is the record we're supposed to consider on it? I guess it's both the 12B1 and a 12B6 motion for lax standing. Are we only to look at the allegations of the complaint, or do we look at affidavits and documents? In this case, I believe everything in the excerpts of record and the supplemental excerpt of record is appropriate for the court to look at. And you think that is appropriate under 12B where there's one or six in this context? Yes, they are public records. But any disputed issues have to be resolved in favor of the non-moving party, the plaintiff? You know, there are any disputed issues besides the two new issues that the plaintiff brought up today. One that the landlord's now no longer, you know, allowing her to be at the property, or maybe not allowing her to sleep at the property. And then the other one that they're now back to just seeking an accommodation at the apartment complex, because that's not what the complaints or the pleading, her opening or answering brief. Counsel, I just need some clarification. If the property manager says, okay, it's fine. You can stay here. You can sleep in the car, in the parking lot. Would that property manager be in violation of subsection D? No. So subsection E allows for a person to sleep on the car or on the property with permission of the property owner. So for up to 24 hours. So what does D do then? D would be if that exception, subsection E did not apply the exception there. So if it was without permission, or in subsection I, if it was more than 24 hours, then the property owner could be cited. So let me just clarify your answer to Judge D'Alba. So as a preliminary matter, the city's position is subsection I, even though it refers to parking, is really talking about camping, sleeping. It's broader than just parking. That's what you do in your vehicle, in your camp or your recreational vehicle. Okay. So if you're parking in a car or a recreational vehicle under subsection I, that includes sleeping in that vehicle as well. Okay. And then separate and apart from that, I mean, that alone, that concession alone, I think from the city would allow Ms. Barham to sleep in her vehicle for up to 24 hours. And she has done so for 800 times. With or without the permission of her landlord, as I read subsection I. Subsection I requires permission of the property owner. I see. Okay. With the consent express or implied of the respective government property owner, manager, renter, lessee. Okay. And then your second response to Judge D'Alba's question is that the city wouldn't enforce subsection D with respect to the private property owner if the consent had been given under subsection I. Correct. Helping with subsection I, it refers to parking of any vehicle with the consent of the respective government property owner, manager, renter, lessee or agent thereof. Where does it apply to private? So in the second part of that section, it also talks about responsible for such property or the property owner, manager, renter, lessee or agent thereof. So it doesn't have to, it does not just apply to government property owners. The purpose of this section was to, when it was adopted in 1999, the legislative history shows that the city council wanted people to be able to camp for Fourth of July weekends and at the bashes, people were still able to camp for the Fourth of July weekends. So it's just missing a comma there. Does this subsection apply to a regular vehicle, a car that's not a vehicle camper or an RV? Yeah, so the subsection likely has a scrivener's error there. After vehicle, it should be a camper. It should be any vehicle, comma, camper or recreational vehicle. The next two uses of that same phrase has a comma, vehicle, camper or recreational vehicle. And then the last line, vehicle, comma, camper or recreational vehicle. So it's just missing a comma there. There's no further questions. Thank you, Your Honor. Thank you. Thank you. Just a couple points. First, in her complaint, she did request her, she did allege that she asked for a second reasonable accommodation to just be at her parking lot. Can you point, yeah, sorry. That is on ER 95, paragraph 29. To be clear, there's nowhere in the record that the landlord, that Sedona asked the landlord for permission or talked to the landlord. The only thing in the record is that Ms. Barron's attorneys talked to the landlord and said, and they said, we need the reasonable accommodation in order to allow her to sleep here. There's nowhere in the record where it says Sedona, the landlord told Sedona no. And to be clear, the way, the plain language of the way that we're reading the code makes sense when we look at what happened because Sedona said no to her when she asked for the reasonable accommodation to sleep in her, at her apartment complex. They didn't say, by the way, if you get the landlord's permission, you're good under I. No. It says parking. They denied her at that time. If we could have had an interactive process, which they denied, which they refused to do, that could have been resolved. But the traceability of the harm that you're citing now is due to the fact that the landlord is only saying no because of the city concerned about subsection D, even though there's an argument that under D there is no coercion because it has, the landlord has the ability under I just to say, okay. We believe that the I is just about parking. That they are clear that it spells out sleeping, camping, lodging everywhere else they intend it to be. And so it clearly says just I on parking. And again, based on Sedona's behavior, we think that that is how they interpret it back then too. I think that your, I heard your friend on the other side say that their behavior is that they, for some over 800 times, your client has been sleeping in her car in the apartment complex and they have not engaged in any enforcement activity or gone after the landlord or, or given her a warning in that context, which sounds consistent to me with their statement here in court today, that they interpret subsection I to refer to camping, parking and camping and sleeping in either a vehicle, a camper or an RV. I see that my time is over. May I respond to that question? Again, if you look at their denial of her request to sleep in her car, if that's the way they were, they interpreted it, why did they say, they said no to her when she asked if she could have the exception for them not to enforce at her apartment complex. They didn't, again, they didn't say, go get the landlord's permission and we're good and we'll give you the letter. We can, we can accommodate you or you don't need this accommodation. All of that could have been resolved with the interactive process, but they didn't do that. They just turned her down, which caused her all of her monetary and concrete injuries that she's had now for four years. And that's why she has ADA standing. And we ask that you remand back to the district court. Do you have any other questions? Thank you very much. Thank you counsel for your very helpful argument today. Thank you. With that, we will stand in recess.
judges: DESAI, ALBA, Chen